**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

NANCY BUCKLES,

        Plaintiff,

v.                                                 Case No. 6:16-cv-1619-Orl-37KRS

SCOTT COOMBS and HOWMEDICA
OSTEONICS CORP.,

        Defendants.

---

**ORDER**

This cause is before the Court on the following:

1. Scott Coombs'[s] Motion to Dismiss Complaint for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) and Incorporated Memorandum of Law (Doc. 12), filed October 11, 2016;

2. Plaintiff's Motion to Remand and Incorporated Memorandum of Law (Doc. 15), filed October 12, 2016;

3. Plaintiff's Response in Opposition to Scott Coombs['s] Motion to Dismiss and Incorporated Memorandum of Law (Doc. 20), filed October 31, 2016; and

4. Defendant [Howmedica Osteonics Corp.]'s Response in Opposition to Motion Remand and Incorporated Memorandum of Law (Doc. 21), filed October 31, 2016.

**BACKGROUND**[1]

On August 21, 2012, Plaintiff Nancy Buckles (**"Buckles"**) underwent knee replacement surgery. (Doc. 2, ¶ 9.) According to the Complaint, the was performed using either a Stryker ShapeMatch cutting guide (**"Cutting Guide"**) or an OtisMed cutting block (**"Cutting Block"**).[2] (*Id.* ¶¶ 9, 10.) Defects in the cutting device used during Buckles's surgery allegedly caused her to suffer "a significant slope of the proximal tibia, leading to a poor outcome resulting in mechanical loosening and the need for revision surgery." (*Id.* ¶¶ 13, 14.)

Based on the foregoing, Buckles filed a product liability action in state court[3] on August 4, 2016, seeking to recover compensatory damages, costs, and interest from OtisMed Corporation (**"OtisMed"**), Stryker Corporation (**"Stryker"**), and Scott Coombs (**"Coombs"**) (collectively **"Defendants"**). (Doc. 1-3, pp. 4–13.) Specifically, Buckles asserted state law claims for: (1) negligence (*id.* ¶¶ 15–21, 30–36, 45–50) (Counts I, III & V), and strict liability (*id.* ¶¶ 22–29, 37–44) (Counts II & IV).[4]

On November 15, 2016, Stryker timely removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 (**"Notice"**).) Stryker averred that removal was proper because: (1) the amount in controversy exceeds $75,000

---

[1] These facts are taken from the Complaint, the allegations of which the Court must accept as true when considering a motion to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

[2] As defined in the Complaint, cutting blocks "are single use, disposable cutting guides which are intended to be used during knee replacement surgery to assist in the positioning of the replacement components in guiding the marking of bone prior to cutting." (Doc. 2, ¶ 12.) The cutting blocks are customized for each patient by proprietary 3D imaging software that uses patient-specific data taken from MRI or CT scans. (*Id.*)

[3] (*See* Doc. 1-3, pp. 4–13.)

[4] Plaintiff originally asserted Counts I and II against OtisMed, Counts III and IV against Stryker Corporation, and Count V against Coombs. (Doc. 2.)

(*id.* at 10–13); and (2) complete diversity exists between Plaintiff, a citizen of Florida, and Stryker, a citizen of Michigan, and OtisMed, a citizen of California. (*Id.* ¶¶ 8–10.) In the Notice, Stryker concedes that Coombs is a citizen of Florida and therefore not diverse from Buckles. However, Stryker asserts that the Court should disregard Coombs citizenship in determining the existence of diversity jurisdiction because Buckles fraudulently joined Coombs to defeat diversity jurisdiction. (*Id.* ¶ 11.)

On October 6, 2016, the parties stipulated to, and the Court granted, the substitution of Defendant Howmedica Osteonics Corp. (**"Howmedica"**) in place of Stryker and OtisMed on the ground that the product used for the surgery was a Stryker Cutting Guide manufactured by Howmedica, not an OtisMed Cutting Block. (*See* Docs. 9, 17.) Buckles now moves to remand this action to state court, claiming that she has stated a viable cause of action against Coombs. (Doc. 15.) Buckles also argues that this action should be remanded because Howmedica has failed to establish that the amount in controversy exceeds the jurisdictional limit. (*Id.*) For his part, Coombs seeks dismissal of the claims against him for failure to state a claim. (Doc. 12.) The parties have filed their respective responses (Docs. 20, 21), and the motions are now ripe for adjudication.

**STANDARDS**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  A district court may have original jurisdiction where both "the matter in controversy exceeds the sum or value of $75,000" and the citizenship of each plaintiff is diverse from the citizenship of each defendant. 28 U.S.C. § 1332(a);

3

*Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)).

The doctrine of fraudulent joinder provides an exception to this diversity of citizenship requirement. *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003). "When a plaintiff names a non-diverse defendant solely in order to defeat diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co*., 454 F.3d 1278, 1281 (11th Cir. 2006); *Waste Mgmt., Inc*., 290 F. Supp. 2d at 1292. "To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" *Stillwell v. Allstate Ins. Co*., 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)) (alterations omitted). The removing party bears the burden of proving by clear and convincing evidence that fraudulent joinder has occurred. *Stillwell*, 663 F.3d at 1332.

A district court's process for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment. *Crowe*, 113 F.3d at 1538. To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting *Pacheco de Perez v. AT & T Co*., 139 F.3d 1368, 1380 (11th Cir. 1998)). The district court makes these determinations based on the

plaintiff's pleadings at the time of removal; however, the court may also consider affidavits and deposition transcripts submitted by the parties. *Id.* Though the district court must resolve all questions of fact in the plaintiff's favor, when the plaintiff fails to dispute affidavits proffered by the defendant, the court may not resolve the facts in the plaintiff's favor based solely on unsupported allegations in the complaint. *Id.* at 1323.

## DISCUSSION

**I.     Motion for Remand**

    **A.     Diversity of the Parties**

Buckles first argues that complete diversity does not exist between the parties because she and Coombs are citizens of the same state. (Doc. 15, pp. 2–5.) Howmedica does not dispute the lack of diversity but argues that Buckles fraudulently joined Coombs to this action because: (1) the negligence claim against Coombs is premised upon duties that do not exist under Florida law (*id.* ¶¶ 13–14); (2) Buckles fails to allege that Coombs breached any duty of care independent of his employer's duty (*id.* ¶¶ 15–16); (3) Coombs had no duty to warn the physician who utilized the Cutting Guide during surgery of the risks and dangers associated with the device (*id.* ¶ 18); and (4) Buckles's allegations against Coombs lack evidentiary support (*id.* ¶ 19.) For the reasons that follow, the Court agrees with Howmedica.

> To state a cause of action for negligence, a plaintiff must allege: (1) that a defendant had a legal duty of care owed to the plaintiff; (2) the defendant breached that duty; (3) that the breach was the proximate cause of the injury; and (4) actual loss or damages. . . . Under Florida law, a sales representative may be held individually liable for her negligent acts committed in the scope of her employment. . . . However, to be held individually liable, it must be alleged that an employee acted tortiously in her individual capacity, or personally participated in the tortious conduct. . . . In other words, the

5

> employee must individually owe a duty to plaintiff, or it must be alleged that the employee knew or should have known of the risks caused by the product.

*Wilssens v. Medtronic, Inc.*, No. 09-60792-CIV, 2009 WL 9151079, at *6 (S.D. Fla. July 23, 2009) (citations omitted).

Here, Buckles alleges that Coombs was under a duty to promote, advertise, represent, recommend, and sell medical devices, including the Cutting Guide in a non-negligent manner. Coombs allegedly breached this duty by:

> a. negligently promoting, advertising, representing, recommending and selling the [Cutting Guide] for use during [Buckles's] knee replacement surgery;
>
> b. negligently testing or failing to test the [Cutting Guide];
>
> c. negligently inspecting or failing to inspect the [Cutting Guide] for defects;
>
> d. marketing, promoting, advertising and representing that the [Cutting Guide] was suitable for use when, if fact, it was not;
>
> e. negligently warning or failing to warn medical professionals, patients and end users that . . . use of the [Cutting Guide] during knee replacement . . . could cause significant knee misalignment; and
>
> f. marketing, promoting, advertising and representing that the [Cutting Guide] was safe when, in fact, Defendant knew that it was not because the [Cutting Guide] would cause the knee to be improperly implanted during normal and foreseeable use.

(Doc. 2, ¶ 48.)

As set forth in Coombs's affidavit, however: (1) he was present during Buckles's surgery "only to facilitate bringing the implants to the operating room and for no other purpose" (Doc. 21-1 ¶ 4); (2) he did not call on Buckles's surgeon at any time prior to her

6

surgery on August 21, 2012, or anytime thereafter (*id.* ¶ 5); (3) he did not "promote, advertise, represent, recommend or sell" the Cutting Guide used during Buckles's surgery (*id.* ¶ 7); (4) he had no involvement in the preoperative imaging for Buckles's Cutting Guide and had no other involvement in the planning of her surgery (*Id.* ¶ 8); and (5) he has no medical training, but rather, relies on the materials and information provided to him by Howmedica in carrying out his job duties. (*Id.* ¶ 9.)

Buckles provides no evidence rebutting these facts. Instead, she relies solely on the allegations in the Complaint to support her negligence claim against Combs. However, it is well-established by the U.S. Court of Appeals for the Eleventh Circuit that when a defendant's affidavit is undisputed by a plaintiff, the court cannot then resolve the facts in the plaintiff's favor based solely on the unsupported allegations in the complaint. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). In such instance, the defendant's undisputed evidence is fatal to the plaintiff's claim. (*Id.*)

Faced with the unopposed facts provided in Coombs's affidavit, the Court concludes that Howmedica has established by clear and convincing evidence that there is no possibility that Buckles can establish a negligence claim against Coombs. *See Wilssens*, 2009 WL 9151079, at *6 (denying plaintiff's motion to remand where removal was based on fraudulent joinder of a sales representative who had: (1) "no medical training;" (2) "no independent knowledge of any potential danger posed by" the defective product that caused plaintiff's injuries; (3) and "no role in testing, design, research, manufacture, or assembly" of the product). Accordingly, the Court is persuaded that Coombs was fraudulently joined to this action and is due to terminated as a defendant in this case. With Coombs's departure from the suit, complete diversity exists between the

parties.

### B.     Amount in Controversy

The sole remaining issue is whether the amount in controversy exceeds $75,000, the threshold for federal diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Howmedica argues that it is facially apparent from the pleadings that the amount in controversy exceeds $75,000 due to the nature and the extent of the injuries alleged in the Complaint. (Doc. 21, pp. 11–13). In rebuttal, Buckles argues that the "Complaint seeks only more than $15,000 and there are no other papers from which the Court may divine the amount in controversy." (Doc. 15, pp. 3, 6–9). For the reason stated below, the Court agrees with Howmedica.

Where removal is premised on diversity jurisdiction, the removing party "must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). The Eleventh Circuit has set forth a procedure for trial courts to follow in determining whether the jurisdictional amount is satisfied at the time of removal. Specifically,

> [w]hen the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.

*Williams*, 269 F.3d at 1319.

Courts need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Roe v. Michelin N. Am.,*

*Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). "Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.*

Here, Buckles avers that due to the use of the Cutting Guide during her total knee replacement, she requires revision surgery. (Doc. 2 ¶ 14.) Buckles also asserts that she sustained permanent and continuing damages, including past and future medical expenses, pain, disability, inconvenience, disfigurement, suffering, and mental anguish. (*Id.*). Accordingly, she seeks compensatory damages, costs, and interest. (*Id.* at 13.)

Applying judicial experience and common sense, the Court finds that the nature of the injury alleged in the Complaint clearly reflects an amount in controversy exceeding $75,000. *See e.g. Gebbia v. Wal–Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (finding that the amount in controversy requirement was satisfied where the plaintiff alleged that her slip and fall resulted in severe physical injury, lost wages, lost enjoyment of life, and pain and suffering); *see also Roe*, 613 F.3d at 1064 (explaining that preventing courts from acknowledging the value of a claim, merely because it is unspecified by the plaintiff, would force courts to abdicate their statutory right to hear a case). Plaintiff''s position that the amount in controversy is not demonstrably above $75,000.00 strains credulity, especially in light of the cost and complexity of medical device product liability litigation.

Having determined that complete diversity exists and that the amount in controversy exceeds the jurisdictional limit, the Court concludes that remand is inappropriate.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion to Remand and Incorporated Memorandum of Law (Doc. 15) is **DENIED**.

2. Defendant Scott Coombs (Doc. 2, ¶¶ 45–50) is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is **DIRECTED** to terminate Defendant Scott Coombs as a party to this action.

4. Scott Coombs' Motion to Dismiss Complaint for Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) and Incorporated Memorandum of Law (Doc. 12) is **TERMINATED AS MOOT**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 28, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record